**William Edward CAMPBELL, Appellant,**

v.

**Amos E. REED, Secretary of Correction of State of North Carolina and Attorney General of the State of North Carolina, Appellees.**

No. 78–6267.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 12, 1979.

Decided March 1, 1979.

---

William R. Davis, Fayetteville, N. C. (Cooper, Davis & Thagard, Fayetteville, N. C., on brief), for appellant.

Kaye R. Webb, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Richard N. League, Asst. Atty. Gen., Raleigh, N. C., on brief), for appellees.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

William Edward Campbell, a North Carolina prisoner, appeals from the district court's denial of his petition for a writ of habeas corpus. We reverse and remand.

On December 2, 1975, Campbell was convicted by a jury on charges of second degree burglary and felonious larceny. He was sentenced to a term of 43 years in prison. A codefendant and purported accomplice, Lewis Miller, testified against Campbell. The gist of his testimony was that he and Campbell had broken into an unoccupied apartment at night and had stolen a television set. On cross-examination, Miller was asked whether any plea agreement had been arranged between himself and the state in exchange for his testimony. He denied that any such agreement existed. During the course of this cross-examination, Miller gave the following testimony:

Q. Of course, you know that whatever sentence you get is dependent on your testimony here, isn't it?

A. Dependent on what?

Q. On what you say in this courtroom today?

A. No.

Q. Have you talked to the District Attorney about the case?

A. No.

Q. You've never talked to the District Attorney at all?

A. No, I don't go around talking to District Attorneys and police officers.

Q. You've never even discussed what you were going to testify to?

A. I wouldn't talk to nobody but my lawyer.

He further testified as follows:

Q. Have you talked with your attorney about this case?

A. Who, my attorney?

Q. Your attorney, Mr. Beaver?

A. Oh, yes, I talked with Mr. Beaver; that's my attorney.

Q. And Mr. Beaver told you it would be to your best benefit to come in here and testify, didn't he?

A. Yes.

Q. He told you if you came in here and testified that you would get a lighter sentence by doing that, didn't he?

A. No, he didn't say that.

Q. Did he tell you that you would get any kind of concessions from the state?

A. He didn't tell me nothing.

Q. He just told you it was your civic duty to come in here and testify, is that right?

A. It was my civic duty.

In fact, there was a plea bargain in existence between this witness and the state at the time of trial. The bargain provided that in exchange for Miller's testifying against Campbell and pleading guilty to several of the charges lodged against him, all remaining charges would be dismissed and the prosecution would recommend that Miller be sentenced to serve only two years in prison.[1] At the request of the prosecutor, Miller's attorney did not inform him of the plea agreement prior to Campbell's trial. He did, however, tell Miller that if he testified against Campbell "everything would be all right," and that "there were things going on that it would be better for him not to know." In an affidavit submitted during Campbell's state post-conviction proceeding, Miller's attorney expressed the opinion that based on their conversations prior to Campbell's trial, Miller should have known an agreement had been reached on his behalf.

The prosecutor did not inform either Campbell or his attorney of the plea bargain between Miller and the state, even though a North Carolina statute required him to disclose the terms of the arrangement before trial.[2] Campbell, through his

1. At the time of Campbell's trial, there were ten separate charges pending against Miller. Those charges included: two counts of second-degree burglary, three counts of felonious breaking or entering, and five counts of felonious larceny.

2. Section 15A–1054(c), N.C.Gen.Stat., provides in part:

attorney, learned of the plea bargain six weeks after he was convicted.

After exhausting his state court remedies, Campbell applied for a writ of habeas corpus on the ground that the state's failure to notify him or his counsel of the existence and terms of the plea bargain with the witness, Miller, violated his right to due process. The district court held that in view of Miller's limited knowledge about the plea bargain, his testimony was truthful and the jury could not have been misled in assessing his credibility. It therefore denied the writ.

 It is well settled that deliberate deception of a court and jurors by the presentation of known false evidence cannot be reconciled with the rudimentary demands of justice. *Pyle v. Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). The principle that the state may not knowingly use false evidence applies where such evidence goes only to the credibility of a witness, since "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence." 360 U.S. at 269, 79 S.Ct. at 1177.

In *Napue v. Illinois,* an accomplice testified that he had received no promise in return for his testimony against the defendant. The prosecutor had, in fact, promised him favorable consideration, but he did nothing to correct the witness's false testimony. The Supreme Court held that failure of the prosecutor to correct the testimony of the witness which he knew to be false denied the defendant due process of law in violation of the fourteenth amendment. The fact that the jury was apprised that a

When a prosecutor enters into any arrangement authorized by this section [charge reductions or sentencing concessions arranged with a testifying witness], written notice fully disclosing the terms of the arrangement must be provided to defense counsel, or

public defender had promised "to do what he could" for the witness was not deemed sufficient to turn what was otherwise a tainted trial into a fair one. 360 U.S. at 268 n.3, 270, 79 S.Ct. 1173.

In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), an unindicted coconspirator testified that he had not been promised leniency in exchange for his testimony. Although the United States attorney who presented the case to the grand jury had promised the witness that he would not be prosecuted if he testified before the grand jury and at trial, the assistant who tried the case was not aware of the promise. The court held that the prosecution's failure to present all material evidence to the jury constituted a denial of due process which required a new trial.

 In the instant case, the prosecutor remained silent while Miller testified that no plea arrangement had been made with the state, though he well knew that such an agreement did exist. Not only did the prosecutor allow the jury to be misled as to Miller's reasons for testifying, but by keeping Miller ignorant of the terms of the plea bargain, he contrived a means of ensuring that this evidence would not come before the jury. Miller's credibility as a witness was an important issue in the case. Evidence of any understanding or agreement for leniency was relevant to his credibility, and the jury was entitled to know of it.

 The fact that Miller was not aware of the exact terms of the plea agreement only increases the significance, for purposes of assessing credibility, of his expectation of favorable treatment. As we noted in *Boone v. Paderick,* 541 F.2d 447, 451 (4th Cir. 1976), a tentative promise of leniency might be interpreted by a witness as contingent upon the nature of his testimony. Thus, there would be a greater incentive for

to the defendant if not represented by counsel, against whom such testimony is to be offered, a reasonable time prior to any proceeding in which the person with whom the arrangement is made is expected to testify.

the witness to try to make his testimony pleasing to the prosecutor. That a witness may curry favor with a prosecutor by his testimony was demonstrated when the prosecutor renegotiated a more favorable plea agreement with Miller after Campbell was convicted.[3]

█ Having found the principles enunciated in *Napue* and *Giglio* applicable to the facts of this case, we must inquire into the materiality of the evidence withheld. A new trial is required if there is any reasonable likelihood that Miller's testimony that he had not been promised leniency could have affected the judgment of the jury. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Boone v. Paderick*, 541 F.2d 447, 451 (4th Cir. 1976). Miller's testimony was extremely important since he was the only witness who could link Campbell to the burglary in question. The other evidence introduced at trial consisted of a confession signed by Campbell and the testimony of a police detective that Campbell pointed out other residences that he allegedly had broken into. Campbell claimed that the confession was untrue. He and another witness testified that the confession was coerced from him by law enforcement officers. Campbell admitted making a statement to the police detective concerning other break-ins, but denied that he had broken into any of these residences. Viewing the record as a whole, we conclude that the jury's verdict might have been different had it known the full extent of Miller's motivation to testify against Campbell. As we observed in *United States v. Sutton*, 542 F.2d 1239, 1243 (4th Cir. 1976), "here the prosecution allowed a false impression to be created at trial when the truth would have directly impugned the veracity of its key witness."

We therefore hold that the state denied Campbell due process of law in violation of the fourteenth amendment. The judgment of the district court is reversed. The case is remanded for the issuance of a writ of habeas corpus unless, within a reasonable time, the state should elect to retry Campbell.

*Reversed and remanded.*

---

3. Five weeks after he testified against Campbell, Miller pleaded guilty to one count of felonious breaking or entering and one count of felonious larceny. Upon recommendation of the prosecutor, he was sentenced to a term of six months in prison on the first count (with credit given for five months served awaiting trial). The sentence on the second count was suspended. Prior to Campbell's trial, the prosecutor had agreed with Miller's attorney to recommend that Miller receive a two-year sentence on these charges.