Willie Foster SELLERS, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. SH–C–80–109–M.

United States District Court,
W.D. North Carolina,
Shelby Division.

Sept. 26, 1983.

Edward T. Hinson, Jr., James, McElroy & Diehl, Charlotte, N.C., for petitioner.

Kenneth Andresen, Asst. U.S. Atty., Charlotte, N.C., for respondent.

ORDER

McMILLAN, District Judge.

These proceedings started as a motion under 28 U.S.C. § 2255 by Willie Foster Sellers to vacate a sentence because of alleged constitutional errors in his trial and conviction in April, 1974, for the burglary of a bank at Fallston, North Carolina.

Sellers is not an amateur; he is serving sentences totaling at least sixty-five years on various previous convictions. Detainers have been filed against him from Alabama, where he has a seven-year sentence to serve, and from Texas, where he has a ninety-nine-year sentence to serve. The outcome of this petition may well have no bearing on when he becomes eligible for parole or whether he ever gets out of prison again. Nevertheless, the issue must be approached as though human freedom is presently involved; the inquiry is whether or not in the course of his conviction on these particular charges he was or was not accorded a fair trial as required by the Constitution and laws of the United States.

An evidentiary hearing was conducted on March 3–4, 1983, by United States Magistrate Barbara H. DeLaney. She has filed a comprehensive memorandum making proposed findings of fact; she recommends that the motion to vacate the sentence be allowed.

The United States has filed objections to the Magistrate's proposed findings and recommendations.

Under 28 U.S.C. § 636(b)(1)(C), the District Court is required to make a *de novo* determination of those Magistrate's findings to which the defendant has filed objections. Under the circumstances of this case, such *de novo* determination does not appear to require the court to have a *de novo* hearing. Rather, the court, as I understand the law, is expected to give to the Magistrate's proposed findings and recommendations such weight as is indicated by the evidence, by the entire record, by their content, and by sound discretion. *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct.

2406, 65 L.Ed.2d 424 (1980). I have carefully reviewed the transcripts of the evidentiary hearing and the pleadings and exhibits, and the findings and recommendations of the Magistrate. I have concluded that the Magistrate's proposed findings and recommendations are carefully considered and consistent with the evidence and each other and with common sense. The objections of the United States to the proposed findings and conclusions of the Magistrate, and to her recommendations, are overruled, and the court adopts the Magistrate's findings and conclusions.

The court, in addition, specifically finds as follows:

1. Some time between early afternoon of Wednesday, October 13, 1971, and 6:00 on the morning of October 14, 1971, the Fallston, North Carolina branch of the Union Trust Company of Shelby was burglarized. A large quantity of money was removed from the vault by burning a hole in the top of the vault, letting water in the vault so that the money would float up to the top, and removing the money from the vault.

2. From the time of the burglary until June of 1972, Sellers had not been charged with the crime nor connected by evidence with the crime.

3. In June of 1972, a woman named Carolyn Sue Alexander was serving a sentence at a state jail in Ohio. Ms. Alexander had been living with Wayne Ruff, a co-defendant of petitioner. At the trial she testified that she had had a baby on September 24, 1971; that six days later she went home; that on or about October 1, 1971, she met Ruff at Greenville at a motel and then came to Charlotte that night; that a day or so later, in Ruff's apartment, she heard petitioner and Ruff and others talking about burglarizing banks; that petitioner took a leading part in the conversation; that a day or so later she heard a news broadcast about the robbery of a bank and that the following day, petitioner and Ruff and their accomplices came home carrying money bags with the name "Fallston" on them. The bags had wet money, some of it with burn spots on it. She testified to incriminating remarks by petitioner.

On cross-examination Carolyn Alexander admitted that she had been convicted of larceny, of burglary, of possession of burglary tools, of grand larceny, and of shop lifting.

Her testimony was the only testimony tending to link petitioner with the bank burglary.

4. Ms. Alexander told her jailer that she wanted to see agents of the F.B.I. Those agents visited her in the jail in Ohio, and got the information above described.

5. Before Carolyn Sue Alexander surfaced, there had been no evidentiary basis to prosecute or convict Willie Foster Sellers for the burglary of the Fallston bank. She was the only witness who identified him or implicated him in the crime. Her testimony was the key testimony against petitioner and without it, the prosecution could not have been brought and would not have succeeded.

6. In the course of the preparation and the trial of the case, the following events occurred:

(a) Petitioner's trial counsel received from the United States Attorney under the Jencks Act an oral description of the testimony that the government expected to be given by their key witness. Though she was not identified by name, this information included facts from which her identity might have been surmised by one familiar with the crime or acquainted with the witness. Counsel made a "gentleman's agreement" with the district attorney not to reveal to petitioner the identity of this witness or the full nature of her involvement in the crime.

(b) Trial counsel did not make any independent investigation of the substance of the witness' testimony or her motives, whatever they were, for testifying.

(c) Counsel made no effort to talk with the witness.

(d) Counsel relied on the defendant who was then and there in prison to do his own investigation.

(e) Petitioner's alibi was that he was in Baxley, Georgia, more than 300 miles away, at the time of the burglary. His wife-to-become, Barbara Thomas, testified that on the day of the crime she and Sellers drove to Baxley, Georgia, and that she left Sellers there while she drove 100 miles back to Savannah where she obtained a divorce decree from her then husband, H.A. Kilpatrick. She said that after obtaining the divorce, she returned to Baxley on October 14, 1971, and that she and Sellers then left Baxley about 5:00 in the afternoon and drove the 300 or so miles to Charlotte, arriving in the early morning hours of October 15th. She displayed a certified copy of her divorce decree dated October 14, 1971. She was vigorously attacked on cross-examination with the prosecutor contending that her presence in Savannah was not necessary on the day the decree was entered. Defense counsel did not offer any evidence as to whether Georgia law required her presence on the day of the decree, and did not make any effort to investigate in Savannah nor to bring known and available witnesses from Savannah, to corroborate this alibi.

7. Defense counsel did not take advantage of significant opportunities to impeach the prosecution's key witness. He did not bring out on cross-examination that she had initiated the interview with the F.B.I. He did not bring out the fact that she had been promised immunity from prosecution in connection with the Fallston bank burglary. He did not call Bobby Herndon, the lawyer who had represented Mrs. Sellers in the Savannah divorce case, who would have testified that she did appear in Savannah and obtained her divorce on October 14, 1971.

8. Although the witness Alexander had identified the date of the Fallston bank burglary by testifying that it was the *same as the date of a bank robbery at Fort Bragg*, North Carolina, petitioner's trial counsel did not check readily available public records and determine when the Fort Bragg robbery actually occurred; in fact, it occurred on *November 1*, 1971, instead of October 14, 1971.

Taken together, these and other instances of lack of alertness and preparation on the part of counsel leave the court with the view that the performance of counsel was not within "the range of competence" required of attorneys in criminal cases. *Marzullo v. Maryland*, 561 F.2d 540, 543 (Fourth Circuit, 1977) *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978).

The conduct of the United States Attorney who prosecuted the case was likewise prejudicial to the petitioner:

(a) Before the key witness, Alexander, testified, she had been surrounded by law enforcement officers and members of the F.B.I. A decision had been made that she should be placed under the witness protection program. She had been promised immunity from prosecution for her own part in the bank burglary. The witness Alexander testified, however, that she had received no promises from the government. She also testified that she had not volunteered to testify, but that the F.B.I. agents had appeared, unsolicited, at her Ohio jail cell.

The United States Attorney did not advise petitioner's counsel of the falsity of those two pieces of testimony by his key witness. Such knowing failure to disclose material information to petitioner's counsel and to reveal the witness' perjury denied petitioner due process of law. *Campbell v. Reed*, 594 F.2d 4, 7 (4th Cir.1979). Petitioner was thereby denied substantial impeachment of the key witness against him.

(b) The district attorney's conduct was compounded by his argument, which asserted as a fact that the key witness, Alexander, was testifying voluntarily and without any promise or hope of reward or gain. *United States v. Sutton*, 542 F.2d 1239, 1245 (4th Cir.1976).

The above acts and omissions of counsel and the above acts and omissions of the

district attorney, taken together, left the testimony and veracity of the prosecution's key witness essentially untarnished, when, in fact, even with considerable allowances, her testimony was considerably tarnished and subject to grave question.

 The fairness of the proceedings was also damaged by the gratuitous assertion of the trial judge in the presence of the jury (and at a time when the government was withholding information from defendant) that "The government does not conceal anything from the defense."

The trial judge's comment that "The government does not conceal anything from the defense" was, I am afraid, not only a prejudicial piece of character testimony, but also (to the extent that the court appeared to state an unvarying practice) contrary to fact. I can recall one case which I tried in this district, in which one district attorney twice protested that all material had been produced which the defendant was entitled to see. Since the statement was patently wrong on the information then available, the court ordered that the material be produced immediately. The district attorney then reached under the table behind which he was sitting and pulled out many hundreds of pages of additional material in the form of transcripts of tapes which had been taken secretly by government investigators in a James Bond type of operation over a period of many months, and which contained information useful to the defendant—who was acquitted by the jury.

The above circumstances are outlined in considerably more detail in Magistrate DeLaney's lengthy, factual memorandum. Even as briefly described in this opinion, they add up to a trial lacking in constitutional fairness. They are especially prejudicial because, despite petitioner's track record as a "big league" criminal, there is at least a reasonable likelihood that he did not commit this particular offense.

Accordingly, IT IS HEREBY ORDERED that:

1. The government's motions for summary judgment of August 4, 1980, and January 6, 1983, are DENIED.

2. The government's motion to dismiss, filed pursuant to Rule 9(a) of the rules governing § 2255 proceedings, is DENIED.

3. The government's objections to the magistrate's findings and recommendations are OVERRULED.

4. The petitioner's motion to vacate sentence in his conviction for bank burglary, SH–CR–73–55 is ALLOWED.