OTT, Judge.
We reverse and remand for a new trial because the state failed to disclose evidence which could have been used to impeach the state’s key witness against appellant.
Appellant and Robert Reichert were charged as co-defendants with conspiracy to traffic in more than 100 pounds of marijuana. Reichert pled guilty as charged in June of 1983. Appellant was tried in December of 1983. Reichert did not testify against appellant at this trial. The trial *18 resulted in a mistrial because of the inability of the jury to agree on a verdict.
Appellant was retried in May of 1984. At this second trial Reichert and his wife testified against appellant. The state’s case was otherwise essentially the same, principally the testimony of several undercover officers. Reichert testified that he heard appellant tell undercover Detective Hill that he was “definitely interested” in purchasing 1000 pounds of marijuana and would be interested in future purchases. Reichert’s wife testified that she heard appellant and Hill discussing the price of the marijuana. The Reicherts were the only witnesses aside from various undercover officers who claimed to have heard these crucial conversations between Hill and appellant.
The jury returned a verdict of guilty as charged.
Prior to the first trial, appellant’s counsel filed a motion for discovery seeking the production of exculpatory material in accordance with Florida Rule of Criminal Procedure 3.220 and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The state responded at that time that it had no such material.
During the second trial, Reichert was cross-examined by defense counsel concerning prior discussions with law enforcement officials:
Q. Okay. Let me see if I can make it simple. Have you been interviewed by anyone, any law enforcement official, in connection with the matters that you say occurred in September of 1982?
A. No, sir, except for earlier. Earlier this evening, me and Mr. Sinardi [the prosecuting attorney] talked.
Q. First time, is that the first time since September of 1982 that you spoke with any law enforcement official about what happened back then, when you spoke to Mr. Sinardi earlier this evening?
A. Involving this case?
Q. Yes, sir.
A. I think so, yes, sir.
The prosecutor declined the opportunity to redirect, and Reichert left the witness stand.
After trial, appellant filed a motion for new trial alleging that he had now discovered that at the time Reichert testified as above he had secured an agreement from the state attorney’s office to assist Reic-hert in gaining an early release from jail in exchange for his and his wife’s cooperation during appellant’s second trial. Appellant asserted that the state’s failure to disclose this “deal” prior to trial was a violation of Brady.
An evidentiary hearing was held at which the following story unfolded. In March 1983 Reichert faced two cocaine trafficking charges in Osceola County, each subject to a fifteen-year minimum mandatory sentence. The state attorney in Osceola County agreed to accept a plea of guilty by Reichert to a lesser charge which carried only a five-year minimum mandatory sentence. In return, Reichert was being given the opportunity to furnish substantial assistance to law enforcement officials in both Osceola and Hillsborough Counties, pursuant to section 893.135(3), Florida Statutes (1983). If Reichert furnished substantial assistance, he would be eligible to have his minimum mandatory Osceola County sentence mitigated. Sentencing was thereupon deferred, and Reichert was transferred to Hillsborough County to face charges as appellant’s coeonspirator, along with other drug trafficking charges which carried a fifteen-year minimum mandatory sentence.
Reichert ultimately pled guilty to lesser charges in Hillsborough County, resulting in minimum mandatory sentences of three and five years. This plea agreement negotiated with Assistant State Attorney Coleman specifically excluded the possibility for Reichert to offer substantial assistance in appellant’s case pursuant to section 893.-135(3). Thereafter, appellant’s prosecution was transferred from Coleman to Assistant State Attorney Sinardi.
Reichert testified at a posttrial hearing that he had spoken with Sinardi a month *19 before the second trial. Sinardi had indicated that he would attempt to have Reic-hert’s sentence mitigated in exchange for Reichert’s testimony at appellant’s second trial. Reichert admitted that Sinardi had not promised Reichert would receive a specific sentence. However, Reichert had in mind Sinardi’s offer of assistance when he testified at appellant’s second trial.
Meanwhile, Reichert had received a five-year minimum mandatory sentence in Osceola County. Two Hillsborough County law enforcement officers had attended that sentencing hearing to notify the court there that Reichert had fully cooperated in appellant’s case and was scheduled to testify at the upcoming retrial.
After appellant’s retrial, Sinardi advised Reichert’s Osceola County attorney that Reichert had been cooperative in appellant’s trial. Sinardi further advised that in exchange for Reichert’s cooperation Sinardi had agreed to recommend to the Hillsbor-ough County court a reduction of Reic-hert’s five-year sentence to three years. Sinardi indicated he was inquiring on Reic-hert’s behalf whether the Osceola County sentence could likewise be mitigated. Otherwise, reduction of the Hillsborough County sentence would serve no purpose.
Reichert’s trial attorney described Reic-hert as a man who was desperate for a way to reduce his sentence.
The trial court denied appellant’s motion for new trial, finding that Hillsborough County prosecutors had made no agreement with Reichert to intercede in his Hills-borough County sentencing. The court concluded that evidence of any agreements between Reichert and either Hillsborough or Osceola County officials would only serve to impeach Reichert. The court reasoned that because this evidence did not bear on appellant’s guilt or innocence, it was not material and consequently did not constitute a violation of Brady.
It came to our attention after oral argument that the Brady issue was raised for the first time below in an untimely motion for rehearing. A trial court is without jurisdiction to hear an untimely motion for new trial. State v. Robinson, 417 So.2d 760 (Fla. 1st DCA 1982). However, the trial court here held a full evidentiary hearing, and the Brady issue has been fully briefed and argued in this court. Additionally, appellant has been through two jury trials, and because of the state’s failure to comply with the discovery request he now faces a third. We find it appropriate to consider this point as having been raised by a motion under Florida Rule of Criminal Procedure 3.850 and address the question on this appeal. Cf. Thompson v. State, 300 So.2d 301 (Fla. 2d DCA 1974).
The general rule announced in Brady is that “the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment.” 373 U.S. at 87. Impeachment evidence falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). In United States v. Bagley, — U.S. —, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court had occasion to address the standard of materiality in cases involving the failure to disclose evidence that could have been used to impeach a prosecutor’s witness. The court used the following test:
The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A “reasonable probability” is a probability sufficient to undermine confidence in the outcome.
The evidence in this case does not support the trial court’s finding that there was no agreement between the prosecutor and Reichert. Reichert’s testimony and evidence of Sinardi’s inquiry about reduction of the Osceola County sentence are to the contrary. It is not necessary that an agreement be ironclad. See Porterfield v. State, 472 So.2d 882 (Fla. 1st DCA 1985). Instead, the focus should be on whether a “tentative promise of leniency might be interpreted by [the] witness as contingent *20 upon the nature of his testimony.” Porterfield, at 885, quoting Campbell v. Reed, 594 F.2d 4 (4th Cir.1979). We feel that there was at the very least a “tentative promise of leniency” in this case. Additionally, Hillsborough County officials were aware that Reichert was assisting them in an attempt to have the Osceola County sentences reduced. We point out that once the defense has moved for disclosure of exculpatory evidence, the state has a continuing obligation to disclose any such evidence that thereafter develops. The defense does not have to repeatedly renew the motion. See Fla.R.Crim.P. 3.220(f).
This impeachment evidence meets the Bagley standard of materiality. This case presents a unique situation — without Reichert’s testimony the jury in appellant’s first trial was unable to reach a verdict. Other than undercover officers, the only witnesses who claimed to have heard conversations between appellant and Detective Hill about the purchase of marijuana were Reichert and his wife. Cf. Porterfield. Without question, Reichert’s testimony was vital to the prosecution. Any evidence which could be used to impeach Reichert would obviously be crucial to appellant. We believe that there is a reasonable probability that the result of appellant’s trial would have been different had the state disclosed to appellant the evidence which could have been used to impeach Reichert. The state’s error in failing to disclose the existence of this impeachment evidence was compounded by the state’s failure to correct on redirect Reichert’s trial testimony that he had not previously discussed the case with law enforcement officials. Consequently, we must reverse and remand for a new trial.
Appellant asserts that further error occurred when the jury advised the trial court that a verdict would not be reached. The judge did not read the standard jury instruction adopted for use when a jury is unable to agree on a verdict. See Fla.Std. Jury Instr. (Grim.) 3.06. Instead, the judge gave informal instructions to the jury. The jury was sent back to deliberate further and ultimately reached a guilty verdict. Appellant urges that the judge’s comments deprived him of a fair trial.
Because we are reversing for a new trial on other grounds, we need not decide whether the judge’s comments during instructions constituted reversible error. We do, however, take this opportunity to encourage the use of the approved standard instructions. As cautioned by the Fourth District in Kozakoff v. State, 323 So.2d 28 (Fla. 4th DCA 1975):
Informal instructions to the jury afford great opportunity for a chance comment either to misstate the applicable law or to leave room for possible misunderstanding by the jury. It was at least partially for this reason that the Standard Jury Instructions were developed and promulgated by our Supreme Court. We respectfully suggest that a trial judge could greatly reduce the risk of error by utilizing these approved standard instructions, at the very least, as a guideline for formulating ... instructions to the jury.
REVERSED and REMANDED for a new trial.
DANAHY, J., concurs.
GRIMES, A.C.J., concurs specially with opinion.