RYDER, Judge.
Jacquelin Cipollina appeals her conviction for third degree murder. Her companion appeal, case no. 85-1313, asks this court to review the denial of her petition for writ of error coram nobis.
Cipollina’s son, Mark, age six, died on October 18, 1981. Approximately eighteen months after the death, the state attorney filed an information charging Cipollina and codefendant, Ronald Jakubowski, with the third degree murder of Mark Cipollina. Approximately five weeks before trial, the state advised defense counsel that it would file an amended information also charging both with second degree murder. The amended information was filed four days before trial. Cipollina and Jakubowski were tried together; both were convicted of third degree murder. Upon the trial court’s denial of Cipollina’s petition for a *3 writ of error coram nobis, these appeals ensued. Jakubowski’s conviction is the subject of a separate appeal.
Cipollina’s first point on appeal challenges the irregularity of the filing of the amended information. Mark Cipollina died on October 18, 1981. On March 24, 1983, the state filed the original information charging murder in the third degree. On February 13, 1985, the state hand-delivered a copy of an amended information charging in the first count murder in the second degree. The second count was identical to the count in the original information, except the dates were expanded to cover from 10/14/81 to 10/18/81. This hand-delivered copy was never filed with the court. However, the state did file with the court another amended information on March 22,1985. That amended information was designated a refile and charged Count I, murder in the second degree, and Count II, murder in the third degree. Count II in the refile was identical to the original information including the date. Cipollina asserts that the filing of the amended information vitiated the original information and, therefore, Count II was barred by the statute of limitations. We disagree. “A subsequently filed information, which contains language indicating that it is a continuation of the same prosecution, timely commenced will not be considered an abandonment of the first information and therefore will not be barred by the statute of limitations.” Rubin v. State, 390 So.2d 322, 324 (Fla.1980).
Cipollina also challenges the irregularity of the state’s procedure in amending its information. An information serves the important function of protecting a person’s legal right to be put on notice of the charges against him, the right and opportunity to chart a defense, and the right against double jeopardy. Cipollina does not show that these rights were adversely affected by the irregularity of the amendment. Absent a showing of surprise, embarrassment or prejudice by the amendment, we cannot find reversible error on this point. Johnson v. State, 190 So.2d 811, 812 (Fla. 4th DCA 1966).
Cipollina’s second point on appeal alleges the trial court erred in allowing the jury to consider “cumulative” and “inflammatory” photographic evidence of the victim. “The law is well established that admission of photographic evidence is within the trial court’s discretion and that a court’s ruling will not be disturbed on appeal unless there is a showing of clear abuse.” Duest v. State, 462 So.2d 446, 449 (Fla.1985). The record clearly reflects that the trial court carefully considered the photographic evidence, admitted some photographs and excluded others. We find no evidence that the trial court abused its discretion by permitting the photographs to be admitted into evidence at trial.
Cipollina’s next point on appeal that merits discussion is an alleged Bruton[1] violation. The state called a Detective Pfleiger to testify concerning the statements of both Cipollina and Jakubowski. In sum, Pfleiger’s testimony was that both defendants gave essentially the same statement. Cipollina testified in her defense; Jakubowski did not. Cipollina also called Detective Mariani to rebut the testimony of Detective Pfleiger. Cipollina argues that since Jakubowski did not testify, the admission of a statement by him implicating her was a violation of Bruton and section 90.-804(2)(c), Florida Statutes (1985). The Florida Evidence Code, including the section cited by Cipollina, was enacted by the legislature in 1976 and became effective July 1, 1977. The Code codified the Bruton decision. Subsequent to the codification, the Supreme Court modified the Bruton decision in Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). That decision held that the admission of “interlocking” confessions at trial does not violate a codefendant’s rights. This court has followed, of course, the Supreme Court’s modification of Bruton. Adams v. State, 445 So.2d 1132, 1133 (Fla. 2d DCA 1984). Two other districts have expressly adopted *4 the “interlocking” confession rule. Thomas v. State, 409 So.2d 1185 (Fla. 4th DCA 1982); Damon v. State, 397 So.2d 1224 (Fla. 3d DCA 1981). Detective Pfleiger’s testimony is admissible because the code-fendant’s statements are sufficiently interlocking to fall within this exception to the Bruton violation.
Cipollina also argues that Detective Pfleiger’s testimony was greatly confused, it conflicted with Detective Mariani’s testimony, and Pfleiger used no notes. She also argues that Pfleiger’s report was poorly and inaccurately done, and that their confessions were not electronically recorded. We do not review these assertions; they go to the weight given the evidence and the credibility of the witnesses, both functions clearly within the domain of the jury.
Cipollina’s next point on appeal alleges a Brady[2] violation. The Brady violation was argued in a motion for new trial as well as in a petition for a writ of error coram nobis. Both the motion and the petition were denied by the trial court, and Cipollina appealed. Because the motion for new trial was untimely, the trial court correctly denied the motion for lack of jurisdiction. State v. Robinson, 417 So.2d 760 (Fla. 1st DCA 1982). The proper test for issuing a writ of error coram nobis is as follows: The facts must be “of such a vital nature that had they been known to the trial court, they conclusively would have prevented the entry of the judgment.” (Emphasis in original). Hallman v. State, 371 So.2d 482, 485 (Fla.1979). Langston v. State, 444 So.2d 1156, 1157 (Fla. 2d DCA 1984). A review of the record indicates that the trial court correctly applied this test in denying Cipollina’s petition. Both of the trial court’s rulings were procedurally correct, but to end our analysis here would elevate form over substance and ignore the ultimate goal: justice.
We have, in the record before us, the dialogue at trial wherein the alleged Brady violation occurred, a transcript of the hearing on the motion for new trial, and the transcript of the hearing on the petition for a writ of error coram nobis. In addition, the Brady issue has been fully briefed and argued in this court. Given that the information above is before this court and given the possibility that justice may elude us, we find it appropriate to consider the Brady issue as having been raised by a motion under Florida Rule of Criminal Procedure 3.850 and, therefore, address the Brady issue on this appeal. Marrow v. State, 483 So.2d 17, 19 (Fla. 2d DCA 1985).
Florida Rule of Criminal Procedure 3.220(a)(1)(i) requires the prosecutor, after written demand by the defendant, to disclose to the defense counsel “the names and addresses of all persons known to the prosecutor to have information which may be relevant to the offense charged, and to any defense with respect thereto.” The record does not contain evidence that a written request was made. Even so, that is not fatal to our analysis. Subsection (2) of rule 3.220(a) states: “As soon as practicable after the filing of the indictment or information, the prosecutor shall disclose to the defense counsel any material information within the state’s possession or control which tends to negate the guilt of the accused as to the offense charged.” Section (f) of the same rule provides that these duties are continuous during the course of the proceedings. On the third day of trial, the prosecutor stated the following to the trial court in the presence of defense counsel: *5 No one discussed this matter again on the record during trial. Mr. Stokes, the man who initially contacted the state attorney’s office, contacted Gipollina’s counsel shortly before sentencing. Only then did defense counsel learn the full extent of the evidence available from Mr. Stokes. Stokes had met Jakubowski in jail, and Jakubow-ski had told Stokes that Cipollina was at work when the victim was burned in the bath. Stokes testified at the hearing on the petition for the writ of error coram nobis that he was working at the time he contacted the state attorney’s office and was not in jail.
*4 [Mr. Crow, of the state attorney’s office] advised me that he has been contacted by a witness in the Pinellas County Jail that states he was incarcerated with defendant Jakubowski and that there are statements. He contacted our office upon reading of the article in the newspaper. I don’t know the extent of the statements that supposedly the defendant has given. It supposedly goes to ill will and spite on the defendant Jakubowski’s part toward the victim of this case.
*5 Two questions remain to complete our analysis. Did the prosecutor fail to disclose, thereby committing a Brady violation? If so, is the violation onerous enough to compel us to reverse the conviction and order a new trial?
The state alleges that the statement as set out above was sufficient to put defense counsel on inquiry notice of the new evidence, relieving them of their duty to disclose. We disagree. The record of the hearing indicates that the state had in their possession Stokes’ name and telephone number gained by them from his first contact with their office. Stokes received a letter from the state attorney’s office a few weeks after the trial so the state had obtained his address sometime after the initial contact if not then. He was not in jail at the time of the initial communication; he was working. Finally, the state did not give defense counsel any notice that Stokes’ testimony would exculpate Cipolli-na, only that the testimony would implicate Jakubowski. We hold the state committed a Brady violation in that its statement should have been more definitive and accurate.
We now turn to the final question of whether the Brady violation compels us to reverse the conviction. The United States Supreme Court has held that only if the nondisclosed evidence is material will it warrant reversal of a conviction. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). As previously stated, it does not matter in the case at hand whether a specific request was made or not; the materiality test covers no request, general request, and specific request cases. Id. at 3384. The test is: “The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” Id. We note here that the “reasonable probability” test is easier for the defendant to prove than the “conclusive” test of the writ for error cor-am nobis. We hold that had the prosecutor properly disclosed the Stokes’ evidence, there is a reasonable probability that the result of the proceeding would have been different. Stokes’ testimony may very well have been the final piece of the puzzle to complete the picture of Cipollina's defense.
Cipollina’s other points on appeal are without merit. We reverse the conviction of Jacquelin Cipollina and remand for a new trial consistent with this opinion.
Reversed and remanded.
GRIMES, A.C.J., and SANDERLIN, J., concur.

. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).