**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 94-20375
_____

WILLIE RAY WILLIAMS,

Petitioner-Appellant,

VERSUS

WAYNE SCOTT, Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
(September 30, 1994)

Before DAVIS, JONES, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant Willie Ray Williams, a Texas death row inmate, appeals the denial of his petition for writ of habeas corpus. The district court stayed Williams's execution, granted summary judgment in favor of the State, and granted Williams a Certificate of Probable Cause for appeal. We affirm the summary judgment and vacate the stay of execution.

BACKGROUND

Willie Ray Williams and Jo Jo Nichols robbed a convenience store. During the robbery, Williams murdered Claude Schaffer Jr. by shooting him in the back with a pistol while he was in a squatting position behind the counter. Houston police arrested

Williams three days later, at which time he voluntarily confessed to the murder.

Williams pleaded guilty to capital murder. At the punishment hearing, Viola Ferguson testified for the prosecution. She identified Williams as having committed an armed robbery of a Taco Bell just four days before the murder.[1] Williams then testified in his defense. He admitted the Taco Bell robbery, and that he had carried an automatic weapon during that holdup. He denied committing any other armed robberies. Charlotte Parker, Williams former girlfriend, testified for the prosecution in rebuttal. She stated that Williams had committed two other armed robberies before the murder and two more afterwards. She admitted accompanying him on two of those occasions. The jury answered the special issues in the affirmative.[2] The court then sentenced Williams to death.

Williams filed this petition for writ of habeas corpus after exhausting his state remedies of direct appeal and habeas corpus. He raises due process issues under Giglio and Brady, and a claim of ineffective assistance of counsel.

DISCUSSION

---

[1]  Williams was also convicted of theft in 1977.

[2]  The court submitted the following special issues to the jury: "(1)  Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or other would result; (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to provocation, if any, by the deceased."  Tex. Crim. Proc. Code Ann. art. 37.071(b) (1981) (amended 1991).

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We review the district court's grant of summary judgment de novo.  Weyant v. Acceptance Ins. Co., 917 F.2d 209, 212 (5th Cir. 1990).  We consider all the facts contained in the summary judgment record and the inferences to be drawn therefrom in the light most favorable to the non-moving party.  Id. Nevertheless, in the review of a petition for writ of habeas corpus, we presume all state court findings of fact to be correct in the absence of clear and convincing evidence.  28 U.S.C. § 2254(d) (1988); Collins v. Green, 505 F.2d 22, 23 (5th Cir. 1974).

I.  Giglio claim.

Appellant contends that the State violated his right to due process under Giglio v. United States, 405 U.S. 150 (1972).  Giglio requires the disclosure of material evidence affecting the credibility of a witness.  Id. at 154.  The prosecution failed to disclose a plea agreement made with Parker's counsel.  A condition of the agreement required Parker's counsel not to communicate the agreement to Parker before she testified.  The district court found Parker's testimony to be relevant to special issue number two (Williams's continuing threat to society).  Appellant asserts that the nondisclosed plea agreement is material impeachment evidence, and that failure to disclose it is a due process violation.

The district court determined that nondisclosure of the plea agreement was immaterial because Parker was unaware of the

3

agreement. Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Impeachment evidence is not material if the witness does not have knowledge of the underlying fact. United States v. Nixon, 881 F.2d 1305, 1309 (5th Cir. 1989); see also Willhoite v. Vasquez, 921 F.2d 247, 249 (9th Cir. 1990). On state habeas review, the court found that Parker had no knowledge of the plea agreement. We presume that finding to be correct since Appellant has offered no evidence within one of the eight exceptions to 28 U.S.C. § 2254(d) to refute the finding.

Appellant relies on Burkhalter v. State, 493 S.W. 2d 214, 218 (Tex. Crim. App.), cert. denied, 414 U.S. 1000 (1973), for the proposition that the witness's knowledge of the plea bargain is unnecessary. We disagree. The Texas court held that the prosecution's non-disclosure of an immunity agreement with the witness's attorney violated the defendant's due process rights. Id. at 219. In Burkhalter, however, the witness "was not completely in the dark" as to the existence of an agreement; "a very real inference not to prosecute" existed.[3] Id. at 217. In contrast, the state court hearing Appellant's habeas petition found that Parker was unaware of any agreement between the state and her attorney, and the record fully supports that finding.

---

[3] In Campbell v. Reed, 594 F.2d 4, 7 (4th Cir. 1979), the Fourth Circuit did not require a witness to have knowledge of the exact terms of the agreement to find a due process violation. The witness, however, "well knew that such an agreement did exist." Id.

4

Williams also argues in effect that had he known of a plea agreement, he could have argued with more force that Parker expected to benefit from her testimony. We are unable to say that Williams's argument has absolutely no merit. If Williams's counsel had known of the agreement between Parker's attorney and the prosecutor, counsel may have more effectively argued that Parker's lawyer had consciously or unconsciously telegraphed to her that a deal had been made. However, we are persuaded in this case that the marginal benefit Williams would have obtained from this additional fact would not have changed the outcome of the punishment hearing. Williams's attorney vigorously cross-examined Parker about her motives for testifying.[4] Williams, through his cross-examination of Parker, strongly argued that she was expecting

---

[4] During cross-examination, Parker was asked:
Q. [W]hat are you charged with in [this capital murder case]?
A. Resisting arrest; misdemeanor.
Q. I beg your pardon? You are not charged with capital murder?
A. No, sir.
Q. You are not charged with a murder?
A. No, sir.
Q. You are not charged with aggravated robbery?
A. Not in the murder case, no.
***
Q. What has the District Attorney promised you to take the stand today and tell these stories?
A. He hasn't promised me anything.
Q. But, you haven't been charged . . . with capital murder, murder, robbery, aggravated robbery, or anything? Right? You have been charged with a misdemeanor?
***
Q. You don't want to go to the penitentiary, do you?
A. I don't think nobody wants to go to the penitentiary.
Q. And you would say anything in the world to this jury to save yourself in this particular case, wouldn't you?
R. Vol. III at 657-62.

5

compensation from the prosecutor in the form of leniency after Williams's trial was over.

In sum, Parker's ignorance of the agreement substantially reduced its impeachment value. Although disclosure to the jury that the prosecutor had made this concession had some marginal impeachment value, we are persuaded that under the facts presented here its non-disclosure did not affect the jury's verdict. For that reason, Williams's Giglio claim must fail.[5]

II. Brady Claim

Appellant also contends that the State violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963). Brady requires the prosecution to disclose all exculpatory evidence that is material to guilt or punishment. Id. at 87. Cindy Ann Johnson was an eyewitness to the robbery, but did not testify at the punishment hearing. The prosecution gave the defense a summary of her statement that included a cross reference to her full written statement.[6] Defense counsel never checked the full written

---

[5] Our conclusion is further supported by the testimony of Joe Cannon, Williams's lead counsel at the punishment hearing, who testified at Williams's state habeas hearing. Cannon referred to Parker as "a former girl friend who tried to tie [Williams] into two or three robberies and we managed to nullify the examination." When Cannon talked to some jurors afterwards, he noted that "they didn't pay any attention to [Parker]. They considered her an angry girl friend." Rather, it was Ferguson's testimony about Williams's armed robbery committed a few days before the murder that Cannon thought "was so critical and fatal to us." Writ Hearing R. at 70-71.

[6] The summary stated: "She was behind the counter, observed the suspects enter the store, order beer and corn dog then pull the guns and shoot the complainant. Can identify two suspects. For details see written statement."

6

statement, which suggested that the victim may have provoked Williams relevant to special issue number three.

A Brady violation does not arise if the defendant, using reasonable diligence, could have obtained the information. United States v. Ramirez, 810 F.2d 1338, 1343 (5th Cir.), cert. denied, 484 U.S. 844 (1987).  The state court conducting habeas review found that Appellant could have obtained Johnson's written statement.  We presume that finding to be correct.  Because Appellant could have obtained the exculpatory statement through reasonable diligence, his Brady claim fails.

III.  Ineffective Assistance of Counsel

Appellant contends that his appointed counsel did not effectively represent him.  To prove ineffective assistance of counsel, Appellant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984). Appellant raises his Sixth Amendment claim on three fronts:  (1) counsel should have reviewed Johnson's full written statement; (2) counsel conducted a faulty voir dire; (3) counsel should not have recommended pleading guilty.

Appellant's claim pertaining to Johnson's statement fails for lack of prejudice.  A showing of prejudice requires "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 696.  Johnson testified at the trial of

7

Williams's co-conspirator, Joseph Nichols. The state court conducting habeas review found that her testimony contradicted her written statement. Furthermore, Johnson testified that her prior written statement was incorrect. Appellant has not provided any evidence to prove that Johnson's testimony would have been different had she testified at Williams's trial. The addition of Johnson's testimony does not create a reasonable probability that the result of the trial would have been different.

Appellant also contends that his counsel's failure to voir dire prospective jurors on the difference between "deliberately" and "intentionally" rises to ineffective assistance of counsel. Deliberately is the intent element in special issue number one; intentionally is the intent element for capital murder. Deliberately is the higher standard. See Heckert v. State, 612 S.W. 2d 549, 552-53 (Tex. Crim. App. 1981). Thus, Williams could plead guilty and still contest special issue number one.

In determining whether an attorney's performance is deficient, we must avoid the distortion of hindsight. We must evaluate the challenged conduct from counsel's perspective at the time. Strickland, 466 U.S. at 689. Voir dire occurred on January 21-22, 1981. The Texas Court of Criminal Appeals decided Heckert on February 25, 1981. Thus, at the time of voir dire, no definite distinction between deliberately and intentionally had been authoritatively expressed. From counsel's perspective at the time, counsel's performance at voir dire was not deficient.

Finally, Appellant contends that his counsel's advice to plead guilty was faulty because the guilty plea foreclosed any argument on special issue number one. Appellant now claims that his best defense was lack of intent; by pleading guilty he surrendered any opportunity to contest intent at trial or at the punishment hearing. For Appellant to succeed on his claim, he must show a reasonable probability that one juror would have agreed with him on special issue number one.[7] The evidence of intent against Williams, however, was overwhelming. Williams voluntarily confessed to the murder. Dolly Jefferson testified that she entered the store at the same time as Williams and Nichols. After she left, she heard a gunshot and saw Williams run from the store carrying a tin box, which was the cash register's coin box. Two or three other witnesses not called by the prosecution at the punishment hearing would have placed Williams at the scene of the crime. Williams's own testimony, given during cross examination, showed that he shot Schaffer in the back while he was in a squatting position behind the counter. Williams's proposed testimony on his lack of intent which he now argues he was precluded from giving does not undermine confidence in the jury's decision on special issue number one. His ineffective assistance of counsel claim fails for lack of prejudice.

CONCLUSION

---

[7] The Texas capital sentencing scheme requires a unanimous vote by the jurors on the special issues to apply a death sentence. Tex. Crim. Proc. Code Ann. art. 37.071(d).

For the foregoing reasons, the district court's grant of Summary Judgment is AFFIRMED and its Stay of Execution is VACATED.