921 F.2d 247
 Norman Wayne WILLHOITE, Petitioner-Appellant,
v.
Daniel B. VASQUEZ; Attorney General of the State of
California, Respondents-Appellees.
Philip James SYZEMORE, Petitioner-Appellant,
v.
Robert M. REES, Superintendent, Deuel Vocational
Institution; Attorney General of the State of
California, Respondents-Appellees.
 Nos. 89-15801, 89-15829.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Feb. 7, 1990*.
Decided Dec. 27, 1990.
 
 Fern M. Laethem and Sandra Gillies, Public Defenders, Sacramento, Cal., for petitioners-appellants.
 Raymond L. Brosterhous II, Deputy Atty. Gen., Sacramento, Cal., for respondents-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Norman Wayne Willhoite and Philip James Syzemore ("petitioners"), two California state prisoners, appeal the denial of their petitions for writs of habeas corpus brought under 28 U.S.C. Sec. 2254. Petitioners argue they were denied due process in their state court trial by the prosecution's failure to disclose part of a plea agreement with a prosecution witness, by the prosecutor's failure to correct what petitioners contend was false testimony by the witness, and by the prosecutor's alleged misconduct in misrepresenting the terms of the plea agreement in argument to the jury. We have jurisdiction under 28 U.S.C. Secs. 1291 and 2253, and we affirm.
 
 FACTS
 
 2
 Initially, the witness, Timothy Meyer, was charged with murder along with the petitioners. However, as the result of a plea bargain, the charge against Meyer (second degree murder) was reduced to assault with intent to commit grave bodily harm. Meyer was permitted to plead guilty to the reduced charge. In exchange, Meyer agreed to testify against the petitioners at their trial. This agreement was fully disclosed to Meyer, to his attorney, to the petitioners' attorney and to the court. However, there was another part of the agreement which was not disclosed. As a side deal, the district attorney agreed privately with Meyer's attorney that after Meyer testified, the district attorney would support a petition to modify Meyer's sentence to limit the duration of his confinement to time served. This part of the agreement was not disclosed to Meyer, to the petitioners' counsel, or to the court until after Meyer testified and the petitioners were convicted.[1]
 
 ANALYSIS
 
 3
 A. Failure to Disclose Part of the Plea Agreement
 
 
 4
 Petitioners cite Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), in support of their argument that they were denied due process by the prosecution's failure to disclose the side deal with Meyer's counsel. In Giglio,
 
 
 5
 The Government's case depended almost entirely on [the testimony of the witness with whom the undisclosed deal had been made]; without it there could have been no indictment and no evidence to carry the case to the jury. [The witness'] credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.
 
 
 6
 Giglio, 405 U.S. at 154-55, 92 S.Ct. at 766.
 
 
 7
 In the present case, there was evidence independent from Meyer's testimony that connected the petitioners to the murder. This evidence included (1) testimony of petitioner Willhoite's ex-girlfriend that connected him to the knife used to stab the victim, (2) testimony of another witness concerning incriminating statements petitioner Syzemore had made with reference to the killing, and (3) testimony of a third witness that linked both petitioners to incriminating statements made regarding the victim's death. Thus, unlike Giglio, while Meyer's testimony was important, there was sufficient evidence apart from it "to carry the case to the jury." Cf. Giglio at 154, 92 S.Ct. at 766.
 
 
 8
 Moreover, the agreement by which the charge against Meyer was reduced from second degree murder to assault with intent to commit grave bodily harm, in exchange for Meyer's testimony, was disclosed. Impeachment evidence based upon this agreement was presented during the petitioners' trial. The obvious generosity of this agreement provided ample opportunity for the defense to challenge, and for the jury to weigh, Meyer's credibility. There is no doubt that had the jury also been informed that the district attorney had agreed with Meyer's counsel to support an application for a reduction in Meyer's sentence, the jury would have had complete information about the plea bargain. But this additional information would not have assisted the jury in assessing Meyer's credibility. There was no showing that Meyer knew, or even suspected any arrangement had been made pertaining to modification of his sentence at the time he testified. Cf. McCleskey v. Kemp, 753 F.2d 877, 884 (11th Cir.1985).
 
 
 9
 The present case also differs from Giglio in that here the witness Meyer did not testify falsely at trial. So far as Meyer knew, the only agreement which had been reached in exchange for his testimony was that the charge against him would be reduced. His lawyer knew about the side deal relating to reduction of Meyer's sentence, but Meyer did not.[2] Therefore, unlike the situation in Giglio, Meyer's testimony was not affected by the undisclosed portion of the agreement.
 
 
 10
 This case is also unlike Campbell v. Reed, 594 F.2d 4, 7 (4th Cir.1979). There, the prosecution witness' attorney did not inform the witness of the plea agreement prior to his testimony but did tell him that if he testified "everything would be alright," and that "there were things going on that it would be better for him not to know." The Fourth Circuit construed this as a tentative promise of leniency made to the only witness who could link the defendant to the crime charged, and remanded the case to the district court to issue a writ of habeas corpus unless the state elected to retry defendant within a reasonable time.
 
 
 11
 Here, except for the agreement which was disclosed at the outset, there was no showing that Meyer was told anything until the trial was over to suggest that he might receive some additional benefit. Moreover, there was substantial evidence independent of Meyer's testimony which connected the petitioners to the murder.
 
 
 12
 We conclude that the petitioners were not denied due process by the prosecution's failure to disclose the sentence modification aspect of the agreement for Meyer's testimony.
 
 
 13
 B. Failure to Correct Meyer's Trial Testimony
 
 
 14
 Petitioners also argue that the prosecutor committed misconduct of federal constitutional dimension by not correcting Meyer's testimony during the trial to bring to light the undisclosed portion of the plea agreement.
 
 
 15
 When Meyer took the stand he was cross-examined about the possible modification of his sentence. During the course of this examination, the following colloquy occurred between Meyer and counsel for petitioner Willhoite:
 
 
 16
 Q. Mr. Meyer, you received one year in a local jail?
 
 
 17
 A. Yes, I did.
 
 
 18
 Q. And you received probation for this?
 
 
 19
 A. Yes, I did.
 
 
 20
 Q. And after the sentence didn't Mr. Bandy tell you after the outcome of the trial I'll probably be able to get you modified?
 
 
 21
 A. He didn't make a comment like that, no.
 
 
 22
 Q. Did he make a comment similar to that?
 
 
 23
 A. I don't know nothing about modification.
 
 
 24
 Q. Did you ask him to get you a modification after the case is over? Meaning this case?
 
 
 25
 A. Not that I recall, no.
 
 
 26
 The prosecutor did not commit misconduct by not "correcting" this testimony. The testimony was not false. At the time Meyer testified he did not know anything about a deal for modification of his sentence. And this is what he said.
 
 C. Jury Argument
 
 27
 Petitioners contend the prosecutor committed misconduct by misrepresenting the plea agreement to the jury during argument, and that this misconduct violated their right to due process under the fourteenth amendment. We disagree.
 
 
 28
 In his argument to the jury, the prosecutor referred to Meyer's testimony. He told the jury that Meyer was going to spend a year in the county jail, and "it's not as if he exactly just skated off free." In making this argument it was Meyer's testimony--his credibility--to which the prosecutor was referring. So far as Meyer knew, at the time he testified he was facing the prospect of a year in the county jail. This is what the prosecutor's argument conveyed. When viewed in this context, the prosecutor's remarks did not misrepresent the plea agreement or amount to misconduct. Accordingly, we do not reach the petitioner's due process argument.
 
 
 29
 AFFIRMED.
 
 TROTT, Circuit Judge, concurring:
 
 30
 Why did the prosecutor make a secret "side deal" with the attorney for the cooperating defendant/witness Meyer? Why did the prosecutor not want Meyer himself to know of the hidden benefit to be derived by him from testifying? There is a clear answer to these questions: The prosecutor wanted to deprive the jury and the defendants of information to which they would ordinarily be entitled, i.e., information reflecting on the credibility of a key prosecution witness. Keeping Meyer in the dark permitted him to do that.
 
 
 31
 My respected colleagues describe this case as involving a simple failure to disclose part of the plea agreement. I see it as more than that: It involves a pernicious scheme without any redeeming features, a scheme that can only spawn unnecessary post-trial motions and appeals when its presence in a case becomes known to the defense. The scheme violates both the letter and spirit of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)(A prosecutor must disclose to the defense any inducements to a witness to testify.).
 
 
 32
 Every prosecutor knows that competent defense attorneys will use--and appropriately so--the sweetness of the quid pro quo tendered to one defendant to testify against another as the basis of an argument to a jury that the witness's testimony has been compromised or purchased, and is thus suspect. This case provides an example of this situation. The majority opinion describes Willhoite's counsel's attempt to pursue this strategy, an attempt that was blocked by the prosecutor's ruse. The prosecutor secretly disguised the real deal to make it appear less sweet than it was, leaving the jury with the false idea that Meyer was to remain in jail notwithstanding his cooperation. That Meyer was kept ignorant in no way mitigates what must be seen as a conscious effort to dupe the jury. Moreover, Meyer's deal was timed to become a reality after the period expired during which the petitioners could make a motion for a new trial. The purpose of this aspect of the arrangement is also objectionable.
 
 
 33
 Our system of justice sanctions "deals" between prosecutors and codefendants, giving the latter benefits in return for their hopefully truthful testimony. We permit such arrangements because they are necessary to pursue serious criminal activity. On whom do we rely to keep the system honest? The jurors, who have the duty to determine the credibility of the witnesses. Plots to keep them ignorant are not appropriate.
 
 
 34
 The majority opinion says "Meyer did not testify falsely at trial." I disagree. He did testify falsely, but he did not know it. This saves him from perjury, but it does not make his testimony truthful. The prosecutor's silence while this occurred and his disingenuous argument to the jury to the effect that Meyer would get a year in jail on the reduced charges represents conduct we should not countenance.
 
 
 35
 Prosecutors must not do indirectly what the law absolutely forbids them to do directly, i.e., dress up a witness with false indicia of credibility. This is inconsistent with a system of justice that expects integrity from prosecutors, not cheap tricks designed to skirt clear responsibilities. I see no possible permissible purpose to be served by secret side deals with witnesses' attorneys. If we were to sanction such a practice, its existence quickly would become known, and it might become widespread. Eventually it could become internalized. A prosecutor's whisper to a witness's attorney might become a wink to the witness. Witnesses might testify safe in the knowledge they could receive more than promised, and defendants could systematically be deprived of a basis for impeachment. See Campbell v. Reed, 594 F.2d 4, 7 (4th Cir.1979). Such a mess would only end up in post-trial wrangles and appeals.
 
 
 36
 Under the circumstances, I find it most troublesome to condone a secret deal between a prosecutor and a witness's attorney. This objectionable practice is, among other things, nothing more than an improper way around the right to confront witnesses. Moreover, it interferes with the attorney-client relationship between the witness and his lawyer.
 
 
 37
 As much as I find objectionable the prosecutor's conduct, the rule governing this situation, as articulated by the Supreme Court, is that due process is violated only when there is a "reasonable probability that, had the inducement offered by [the prosecutor] to [Meyer's attorney] been disclosed to the defense, the result of the trial would have been different." United States v. Bagley, 473 U.S. 667, 684, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). Viewed in light of the entirety of the evidence, the undisclosed inducement is not that significant. It is not reasonably probable that its disclosure in court would have altered the outcome of the trial. In this respect, I agree with my colleagues' analysis, and thus I would affirm the district court.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Meyer pleaded guilty to assault with intent to commit grave bodily harm on December 1, 1980. A sentencing hearing was held on January 29, 1981, and on that date Meyer was sentenced to a year in the county jail and placed on probation. A state court referee found that the acceptance of Meyer's plea agreement, and the imposition of sentence on the reduced charge, were conditional upon Meyer's testimony against the petitioners. Meyer testified against petitioners in their trial in March 1981. In July 1981, his sentence was modified to time served and he was released from custody
 
 
 [2]
 The fact that Meyer had no knowledge of the agreement for his early release was established in state court proceedings before a referee. We give special deference to this factual determination. Evans v. Raines, 800 F.2d 884, 886 (9th Cir.1986). Here, we find no reason to doubt its validity