[No. 48433-8-I. Division One. February 3, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JEROME YONG KIANG SOH, *Appellant*.

*William J. Johnston*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Rosemary H. Kaholokula, Deputy*, for respondent.

ELLINGTON, J. — Prosecutorial misconduct may require dismissal of all charges where it results in prejudice to the right to a fair trial. Here, the State failed to disclose a promise of leniency made to its key witness. Jerome Soh learned of the promise before trial, however, and fails to show that the State's misconduct prejudiced his right to a

fair trial. We therefore affirm Soh's convictions. We address other issues in the unpublished part of this opinion.

## FACTS

In late spring of 2000, the Washington State Patrol (WSP) began a sting operation involving stolen automobile parts. The operation focused on the activities of Jerome Soh, a dealer in automobile parts residing in Canada. Based on information from a confidential informant, WSP Detective Liburdi arranged three controlled sales of stolen auto parts to Soh in September, October, and November, 2000.

On December 1, 2000, Soh was arrested in connection with these sales. Police searched Soh's storage locker in Blaine and recovered a stolen engine and several cancelled checks made out to Justin Thomas. Thomas was arrested and charged as a codefendant. Thomas had previously worked as an informant for the WSP. He immediately agreed to cooperate with law enforcement by providing information on his dealings with Soh and by testifying in Soh's trial in exchange for "consideration at sentencing."[1] This agreement was disclosed to Soh in discovery, and Soh's counsel interviewed both Thomas and Detective Liburdi regarding their expectations from Thomas' cooperation. Charges against Thomas were severed, and Soh's trial date was reset to March 12, 2001.

On February 27, shortly after Thomas' trial was severed, an exchange occurred involving Thomas' attorney, the deputy prosecutor, and Detective Liburdi. The meeting apparently resulted in a promise of a "substantial reduction of the charges"[2] against Thomas. Specifically, in exchange for his cooperation and testimony against Soh, the WSP agreed not to pursue charges relating to numerous auto theft offenses outside Whatcom County to which Thomas had confessed upon his arrest.

---

[1] Report of Proceedings (RP) (Mar. 22, 2001) at 512.

[2] RP (Mar. 22, 2001) at 232.

This agreement was not disclosed to Soh. It came to the attention of Soh's attorney, however, who filed a motion to dismiss pursuant to CrR 8.3(b). The State denied that any agreement had been made. In an in camera proceeding, Thomas' attorney testified that there had, in fact, been such an agreement. She testified that she had not revealed those further promises to her client. The court found the additional agreement had been made, but denied Soh's motion to dismiss because Thomas had never learned of it, and Soh was therefore not prejudiced. Soh was convicted of two counts of possession of stolen property.

## DISCUSSION

Soh appeals the denial of his motions to dismiss and for a new trial for prosecutorial misconduct, and also contends that the trial court abused its discretion in refusing to allow him to call Thomas' attorney, the deputy prosecutor, and an expert on legal ethics to testify at trial regarding the undisclosed agreement.

The court conducted a hearing on Soh's motion to dismiss. Thomas' attorney, Ms. Coleman, testified in camera that the February 27 meeting occurred because she was not comfortable allowing Soh's attorney to interview her client without further assurances from the State. The deputy prosecutor responded she did not want to "ruin [Thomas] as a witness,"[3] or words to that effect, and asked Coleman to trust her. Coleman had apparently learned, however, that Thomas' initial agreement to cooperate was obtained when Detective Liburdi contacted Thomas without her knowledge, after she had formally appeared as Thomas' counsel. Coleman therefore told the prosecutor that she needed "something more substantial"[4] by way of reassurance than just the deputy prosecutor's promise, given that the deputy prosecutor had permitted a law enforcement officer to talk to her client without her knowledge.

[3] RP (Mar. 20, 2001) at 231.

[4] RP (Mar. 20, 2001) at 231.

Coleman testified Detective Liburdi then told her the WSP would not be interested in pursuing further charges against Thomas beyond those pending in Whatcom County. This apparently meant that WSP would not refer for prosecution any of the numerous auto thefts in the Bellevue area to which Thomas had confessed at the time of his arrest. Detective Liburdi told Coleman she could contact his supervisor for further assurances. Coleman then asked for assurances from the deputy prosecutor, who responded with some form of the phrase "substantial reduction of the charges."[5] Coleman testified she had never communicated this promise to her client, nor had she used that phrase in speaking with him.

The trial court explicitly found Coleman's testimony credible. The court found that while there was "no oral or written plea bargain . . . there clearly was a commitment by the State as communicated to Thomas through the state patrol and as communicated by the prosecutor to Thomas' defense counsel. There was a benefit being extended for Thomas' cooperation and testimony."[6]

 The State is required to disclose exculpatory evidence, including impeachment evidence.[7] Promises of leniency to witnesses may affect the witness' credibility and must be disclosed.[8] Failure to disclose a promise of leniency may also violate the due process clause of the Fourteenth Amendment.[9] Where prosecutorial misconduct has materially affected the right to a fair trial, CrR 8.3(b) may require dismissal.[10]

---

[5] RP (Mar. 20, 2001) at 232.

[6] RP (Mar. 20, 2001) at 272-73.

[7] See *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State v. Benn*, 120 Wn.2d 631, 650, 845 P.2d 289 (1993).

[8] *Giglio v. United States*, 405 U.S. 150, 154-55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *Brady*, 373 U.S. at 87.

[9] *Giglio*, 405 U.S. at 154-55.

[10] CrR 8.3(b) provides: "The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused

The State maintains it had no duty of disclosure here because the deputy prosecutor never reached a formal agreement with Thomas beyond the original promise of consideration at sentencing. We disagree. Thomas was a key witness for the State; his motives in testifying could be affected by any promise of leniency. Whether the promise was memorialized by a specific written agreement is not determinative.[11] Nor is the fact that a promise was made by a police officer rather than a deputy prosecutor.[12] Whether the deputy prosecutor believed she could enforce an agreement relating to charges in other counties is irrelevant. The question is whether the offer of leniency may have any impeachment value. If so, it is exculpatory and must be disclosed.[13] It is difficult to imagine an offer of leniency in exchange for testimony that would not have impeachment value. Further, here the prosecutor herself endorsed the detective's promise, which was made only because Coleman insisted upon further assurances before subjecting Thomas to an interview. The State's failure to disclose the promise constituted misconduct.[14]

■ The next question is whether Soh has shown prejudice to his fair trial rights. The trial judge concluded he had not, because the undisclosed promises of consideration had never been communicated to Thomas. We agree.

which materially affected the accused's right to a fair trial. The court shall set forth its reasons in a written order."

[11] *See Boone v. Paderick*, 541 F.2d 447, 451 (4th Cir. 1976) (tentativeness of promise of leniency may increase its relevance by creating greater incentive for witness to tailor testimony to satisfy prosecution); *Campbell v. Reed*, 594 F.2d 4, 6 (4th Cir. 1979) (due process violated where witness' attorney told client only that "everything would be all right," and witness later testified that he had not made any agreement); *Burkhalter v. State*, 493 S.W.2d 214, 217-18 (Tex. Crim. App. 1973) (due process violated where State reached immunity agreement with witness' counsel, witness was told only that testifying "could help his case," and witness testified that no immunity agreement existed).

[12] *See Boone*, 541 F.2d at 450-51 (due process violated where prosecutor failed to disclose offer of leniency made by police officer).

[13] *See Brady*, 373 U.S. at 87; *Benn*, 120 Wn.2d at 650.

[14] The trial court explicitly found misconduct only in regard to a separate issue, the deputy prosecutor's representation to the court that the extent of her communication with Thomas' counsel consisted of only two e-mails.

■ What Thomas did not know could not supply a motivation for him to testify falsely. The agreement to "reduce" charges was never communicated to Thomas and therefore had no impeachment value.[15] Further, the entire exchange of communications was revealed to Soh before trial, and his counsel was thus able to fully prepare to cross-examine Thomas about his motives for testifying. Thomas testified he had agreed to cooperate in exchange for consideration at sentencing, as promised by Detective Liburdi. Thomas also testified that he had previously cooperated with the WSP in exchange for not being charged with more than 20 car thefts, and that he had thereafter taken part in an additional 13 or 14 car thefts, to which he had confessed, resulting in only four charged counts (as opposed to Soh's six). Thomas was cross-examined as to any deal he might have been aware of regarding the additional thefts, or any belief that he might avoid jail time. Thomas responded that he expected to plead guilty to the four charged counts, but believed he likely would go to jail.

Thomas appears to have been truthful as to the consideration he expected in exchange for his testimony. This case is thus unlike those in which witnesses expressly and falsely denied having made any plea agreements or expecting any consideration from the State.[16] Soh was fully informed before trial, and had a full and fair opportunity to cross-examine Thomas. The record thus does not demonstrate prejudice to Soh's right to a fair trial.

■ Soh contends he should have been permitted to call the deputy prosecutor, Thomas' attorney, and an expert on legal ethics at trial to impeach Thomas' testimony. But Thomas' attorney had testified in camera that she did not tell Thomas about the reduced charge offer; calling her as a

---

[15] See Willhoite v. Vasquez, 921 F.2d 247 (9th Cir. 1990) (no due process violation where witness had not been informed of agreement his attorney had reached with the State); Hayes v. Woodford, 301 F.3d 1054, 1073-74 (9th Cir. 2002) (no due process violation where witness had no knowledge of deal, communicated only to his attorney, that was more extensive than that to which witness testified).

[16] See Giglio, 405 U.S. at 152; Campbell, 594 F.2d at 6; Burkhalter, 493 S.W.2d at 217.

witness therefore had no purpose except to attempt to impeach her prior testimony. Soh suggests no authority for such a course of action. Soh also argues that the State should not be permitted to present evidence it knows to be factually inaccurate. In general, we agree with this proposition, but here, the only issue was Thomas' credibility. What mattered to the jury's determination, therefore, was what Thomas knew, not what the lawyers knew. Asking Thomas what consideration he expected was not the presentation of factually false testimony. The trial court did not err in refusing to permit Soh to call the collateral witnesses.

The trial court was thorough and careful in protecting Soh's trial rights here, and as a result, the State's misconduct caused Soh no prejudice. We affirm the court's refusal to dismiss.

Affirmed.

The balance of this opinion has no precedential value and will not be published, but will be filed for public record pursuant to RCS 2.06.040.

GROSSE and APPELWICK, JJ., concur.

Review denied at 150 Wn.2d 1007 (2003).