# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

|  |  |
|---|---|
| STATE OF WASHINGTON, | No.  48116-2-II |
| Respondent, |  |
| v. |  |
| JOHN PALACIOS AQUINO, | UNPUBLISHED OPINION |
| Appellant. |  |

JOHANSON, J. — John Palacios Aquino appeals his convictions for second degree identity theft, bail jumping, and forgery.  We conclude that (1) sufficient evidence supports the identity theft conviction, (2) the bail jumping charging document is not deficient, and (3) the trial court properly denied Aquino's dismissal motion.  We affirm his convictions.

## FACTS

### I.  BACKGROUND FACTS

In October 2014, Aquino tried to cash a $1,900.24 check at the Emerald Queen Casino. The check was written on the account of the Paint Smith Company.  Casino staff noticed alterations on the check, believed the check was fraudulent, and contacted law enforcement.  Officer Gary Tracy arrived, reviewed the check, and spoke to Aquino and casino security staff.  Officer Tracy arrested Aquino.

## II. Charging Document

In May 2015, by amended information, the State charged Aquino with second degree identity theft, forgery, and two counts of bail jumping.[1] The information's caption states that it was filed in the Superior Court of Washington for Pierce County. For the first bail jumping charge, the information stated,

> COUNT III
>
> And I, MARK LINDQUIST, Prosecuting Attorney for Pierce County, in the name and by the authority of the State of Washington, do accuse JOHN PALACIOS AQUINO of the crime of BAIL JUMPING, a crime of the same or similar character, and/or a crime based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, and/or so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of the others, committed as follows:
>
> That JOHN PALACIOS AQUINO, in the State of Washington, *on or about the 22nd day of January, 2015*, did unlawfully and feloniously, having been held for, charged with, or convicted of Identity Theft in the Second Degree and/or Forgery, a class "B" or "C" felony, and been released by court order or admitted to bail *with knowledge of the requirement of a subsequent personal appearance* before any court in this state, fail to appear as required, contrary to RCW 9A.76.170(1),(3)(c), and against the peace and dignity of the State of Washington.

Clerk's Papers (CP) at 5 (emphasis added). The wording was identical for the second count of bail jumping aside from the date: "the 18th day of March, 2015." CP at 6.[2]

---

[1] RCW 9.35.020(3); RCW 9A.60.020(1)(a), (b); RCW 9A.76.170(1), (3)(c).

[2] Aquino did not challenge the information at trial.

### III. Motion To Dismiss Or Suppress

In June 2015, Aquino's counsel filed a motion to dismiss the charges of second degree identity theft and forgery under CrR 8.3(b) and CrR 4.7(h)(7)(i)[3] or to have Officer Tracy's testimony suppressed due to a *Brady*[4] violation. Defense counsel argued that the State did not notify him that Officer Tracy made a false statement in a past police report. Defense counsel had represented the defendant, Joaquin Delgado, in the past case, and there, Officer Tracy accused Delgado of trying to hit him with a motor vehicle, which led to a second degree assault with a deadly weapon charge.

Aquino's counsel also submitted Officer Tracy's Delgado police report, an e-mail exchange defense counsel had with the Pierce County deputy prosecutor, Diane Clarkson, and Clarkson's statement dropping the second degree assault charge.

In his report, Officer Tracy states that he stepped in front of Delgado's car, that Delgado "drove [the car] directly toward" Officer Tracy, and that Delgado would have hit Officer Tracy if he had remained where he stood. CP at 21. Officer Tracy signed his report certifying under penalty of perjury that the statement was true and correct.

In the e-mail exchange, Clarkson opined that surveillance video of the incident showed that Officer Tracy did not step in front of the car, but stood next to it, and that because the car was

---

[3] CrR 8.3(b) authorizes dismissal of a criminal prosecution where government misconduct prejudiced the accused by materially affecting the accused's right to a fair trial. CrR 4.7(h)(7)(i) authorizes the court to dismiss an action or take other appropriate action if a party has failed to comply with applicable discovery rules. Aquino challenges only the denial of his motion under CrR 8.3(b).

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

pointed away from Officer Tracy, it would not have hit him if he remained where he stood. Clarkson stated, "Upon review of the surveillance tape, the State does not have sufficient evidence to pursue the charge of Assault in the Second Degree." CP at 23.

Defense counsel argued that the evidence from the Delgado case (Delgado evidence)[5] that he submitted with his motion is impeachment evidence with respect to Officer Tracy. Officer Tracy's assertion that Aquino made suspicious statements with respect to the check would be used by the State as evidence of guilt. Thus, defense counsel argued that Officer Tracy's credibility as a witness was in question and prior instances of dishonesty by Officer Tracy would be important exculpatory evidence. Defense counsel argued that the Delgado evidence showed a prior instance of dishonesty because it showed that Officer Tracy "made a false statement in his police report." CP at 8. Defense counsel opined that at a minimum, the prosecutor inadvertently suppressed the Delgado evidence. Defense counsel thus argued that this suppression prejudiced Aquino because "at this moment, no one is scheduled to testify on the exculpatory matter." CP at 10. This was the sum of defense counsel's prejudice argument in his pleadings.

The State responded that the trial court should deny the motion because the Delgado evidence was not potential impeachment evidence. The State further argued that Aquino could not show prejudice because defense counsel had the Delgado evidence that he argued the State should have disclosed. And the State opined that Officer Tracy's police department confirmed

---

[5] In Aquino's motion, he specifically mentions "Delgado's case" and the prosecutor's e-mail in relation to the impeaching evidence, while at the hearing on the motion Aquino references the surveillance video as the impeaching evidence. The parties do not specify what exact items they are referring to when they discuss the impeaching evidence. We assume the impeachment evidence discussed by the parties is the evidence Aquino included in his motion to dismiss as well as the video.

that he had never been disciplined for any honesty or integrity issues, including for the Delgado case.

On June 30, the trial court heard arguments on Aquino's motion to dismiss. Defense counsel noted that he had been in contact with Clarkson and confirmed that she could testify at trial regarding the Delgado evidence. The State played the surveillance video. The video showed Officer Tracy running up to the passenger side of Delgado's car. Delgado then drove forward past Officer Tracy with space between Officer Tracy and the car. As the car drove by, Officer Tracy kicked at the car, but the video does not show that the car drove towards him.

The trial court ruled,

> [*I*]*n order for this to be impeachment evidence, it needs to be clear that somebody lied under oath, somebody made a false representation under oath,* and I am not going to find, based on the video that I just saw, based on the report that I have read . . . I'm not going to find that this officer lied.
>     Clearly, the video is at odds with his description of the event, but to find that he made a material misrepresentation or that he lied in the course of investigating this incident I think is more of a stretch than I'm going to make.
>     . . . [A]ny time there is video, the video is almost always at odds with at least somebody's description of the event. To find that everybody is lying who describes an event different than it appears in a video is, in my judgment, not something that's appropriate, and I'm not going to make that kind of a finding in this case.

2 Report of Proceedings (RP) at 61-62 (emphasis added). The trial court concluded that the Delgado evidence was not potential impeachment evidence and denied Aquino's motion to dismiss.[6]

---

[6] There is no written order on Aquino's motion to dismiss in our record.

IV. TRIAL

At trial on July 1, Officer Tracy, Paint Smith Company employee Marcia Cavender, casino cashier James Gardner, and his supervisor Kathy Faucett were among the State's witnesses. Officer Tracy testified that after he read Aquino his *Miranda*[7] rights, Officer Tracy asked Aquino where he got the check. Aquino told Officer Tracy that he got the check in the mail. When Officer Tracy asked about Aquino's employer to learn more about how Aquino got the check in the mail, Aquino said that he worked for the Paint Smith Company, but then said he actually worked for a subcontractor. And when asked for more information about the subcontractor, Aquino could not provide his last job site, pay rate, or supervisor name. Cavender testified that she issued checks for Paint Smith Company and that based on the check's number, it was a check that she wrote to a vendor for $498. The check appeared to be altered because the payee, address, and amount areas had a "whited out" area, different from the company's usual checks. 2 RP at 132. In addition, the font differed from the one that the company uses. Cavender confirmed that Aquino did not work for Smith Paint Company and that she never wrote a check to him on behalf of the company.

Gardner testified that after Aquino handed him the check to cash, Gardner took it to Faucett to approve, and Faucett was suspicious of the check. Gardner also verified that the check and the casino surveillance video of his interaction with Aquino offered by the State were fair and accurate representations. The check and casino surveillance video were entered into evidence. At no point during the video did any casino employee hand Aquino cash or return the check. The check itself contained no stamps or other markings indicating that it was cashed.

---

[7] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Faucett testified that Aquino's name, the date, the amount of the check, and Aquino's address were all typed over what appeared to be erased areas. On the top left corner of the check, the issuing company name, "Paint Smith," included the misspelled word "Copmany." Ex. 1. After reviewing the check, Faucett notified her supervisors who immediately called casino security. She stated that she was "not going to approve a check" that she believed was bad. 2 RP at 101. The defense rested without presenting any witnesses.

### V. IDENTITY THEFT JURY INSTRUCTION

The second degree identity theft to-convict instruction stated in relevant part,

> To convict the defendant of Identity Theft in the Second Degree as charged in Count I, the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about 3rd day of October, 2014, the defendant knowingly obtained, possessed, or transferred, or used as a means of identification or financial information of another person;
> (2) That the defendant acted with the intent to commit or aid or abet any crime;
> (3) *That the defendant obtained credit, money, goods, services, or anything else that is $1500 or less in value from the acts described in element (1) or did not obtain any credit, money, goods, services, or other items of value.*

CP at 58 (emphasis added). Neither party objected to this instruction.

### VI. VERDICT AND SENTENCING

The jury found Aquino guilty as charged.[8] The trial court sentenced Aquino to 10 months of confinement. The trial court noted that Aquino was indigent and lacked prospects for future income. Aquino explained to the trial court that his daughter had a serious medical condition that

---

[8] The facts related to the two bail jumping charges are not relevant to this appeal and are not included here.

created a significant hardship for his family. As a result, Aquino's wife worked full time and Aquino helped care for his daughter and their other three children. Aquino had not worked in quite some time, but when he does work, he worked as a roofer. Aquino stated that he would look for work once released. The trial court entered an order of indigency allowing Aquino to appeal at public expense. Aquino appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Aquino relies on the law of the case doctrine to argue that insufficient evidence supports his conviction because the second degree identity theft to-convict instruction obligated the State to prove that he obtained nothing or something valued at $1,500 or less. We disagree that the evidence is insufficient.

### A. STANDARD OF REVIEW

In a sufficiency of the evidence challenge, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

"In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We "must defer to the trier of fact for purposes of

resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Homan*, 181 Wn.2d at 106.

### B. LAW OF THE CASE DOCTRINE AND SECOND DEGREE IDENTITY THEFT

Jury instructions to which neither party objects become the law of the case and delineate the State's proof requirements. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998) (quoting *State v. Hames*, 74 Wn.2d 721, 725, 446 P.2d 344 (1968)). In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instruction. *Hickman*, 135 Wn.2d at 102.[9]

Identity theft is defined as follows:

(1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(2) Violation of this section when the accused or an accomplice violates subsection (1) of this section and obtains credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value . . . *shall constitute identity theft in the first degree.* Identity theft in the first degree is a class B felony punishable according to chapter 9A.20 RCW.

(3) A person is guilty of identity theft in the *second degree when he or she violates subsection (1) of this section under circumstances not amounting to identity theft in the first degree.* Identity theft in the second degree is a class C felony punishable according to chapter 9A.20 RCW.

RCW 9.35.020 (emphasis added).

---

[9] In January 2016, the United States Supreme Court decided *Musacchio v. United States*, ___ U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016). Aquino argues that we should not apply *Musacchio* because the Washington Supreme Court has not addressed it. This court declined to follow *Musacchio* in *State v. Makekau*, 194 Wn. App. 407, 415 n.2, 378 P.3d 577 (2016). Thus, we follow existing Washington law pursuant to *Makekau*.

The note on use for the *Washington Pattern Jury Instruction* in place at the time of trial for second degree identity theft recommends that the language specifying the $1,500 threshold "should be used only for cases in which the crime of second degree theft is submitted to the jury as a lesser offense, when the crime needs to be distinguished from the greater offense." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL, 131.06, note on use at 561 (3d. ed. 2008)[10] (WPIC).

### C. SUFFICIENT EVIDENCE SUPPORTS THE IDENTITY THEFT CONVICTION

Here, in relevant part, the to-convict instruction for second degree identity theft stated,

> To convict the defendant of Identity Theft in the Second Degree as charged in Count I, the following elements of the crime must be proved beyond a reasonable doubt:
>
> . . . .
> (3) That the defendant obtained credit, money, goods, services, or anything else that is $1500 or less in value from the acts described in element (1) or did not obtain any credit, money, goods, services, or other items of value.

CP at 58.

Second degree identity theft was not submitted as a lesser offense, but was the charged offense. The to-convict instruction required the jury to find that the defendant obtained nothing or something with a value of $1,500 or less. Neither Aquino nor the State objected to the instruction. The State appears to agree that they bear the burden to prove the additional element. Thus, the to-convict instruction is the law of the case. *Hickman*, 135 Wn.2d at 102.

---

[10] A comment on the updated WPIC for second degree identity theft states that "[t]he instruction has been revised in this edition to eliminate the requirement that the State prove either that the defendant obtained something that was $1,500 or less in value or that the defendant did not obtain anything of value. Second degree identity theft does not require that the defendant obtain anything of value." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL, 131.06, cmt. at 617 (4th. ed. 2016).

The State offered proof in support of this added element. Gardner and Faucett testified that they did not cash the check Aquino presented to Gardner: Gardner took the check to Faucett and Faucett stated that she would not cash a check that looked fraudulent and notified her supervisors, who called security. The casino surveillance video confirmed this testimony. At no point during the video did any casino employee hand Aquino cash or return the check. The check was admitted into evidence and contained no stamps or other markings indicating that it had been cashed.

Based on this evidence, a rational jury could have found beyond a reasonable doubt that Aquino obtained nothing of value in exchange for the forged check. Thus, we hold that sufficient evidence existed to support Aquino's conviction for second degree identity theft.[11]

## II. THE INFORMATION

Aquino argues that the amended information was constitutionally deficient because the two counts of bail jumping omitted the requirement that he knew he had to appear before a particular court on two particular dates. Again, we disagree.[12]

### A. STANDARD OF REVIEW AND RULES OF LAW

We review de novo claims that an information omitted essential elements of a charged crime. *State v. Pittman*, 185 Wn. App. 614, 619, 341 P.3d 1024, *review denied*, 184 Wn.2d 1021

---

[11] In his reply brief, Aquino analogizes this case to Division One's unpublished decision in *State v. Lippincott*, noted at 188 Wn. App. 1032 (2015). But *Lippincott* is unpersuasive. Unlike in our case, the State conceded that none of the evidence established that Lippincott obtained nothing of value by possessing the information. *Lippincott*, 2015 WL 4095289, at *3. Here, the State does not concede that insufficient information established that Aquino received nothing of value from the forged check that he attempted to cash.

[12] Notably, the State does not argue that under a liberal construction the allegedly missing elements could be fairly implied in the information.

(2015). An information is constitutionally deficient if it fails to list the essential elements of a crime. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). The essential elements of the crime are those that the prosecution must prove to sustain a conviction. *State v. Peterson*, 168 Wn.2d 763, 772, 230 P.3d 588 (2010). Requiring the State to list the essential elements in the information protects the defendant's right to notice of the nature of the criminal accusation guaranteed by the United States and Washington Constitutions. *Zillyette*, 178 Wn.2d at 158.

"Charging documents which are not challenged until after the verdict will be more liberally construed in favor of validity than those challenged before or during trial." *State v. Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). We must consider the document as a whole to determine whether "'the necessary facts appear in any form, or by fair construction can be found within the terms of the indictment.'" *Kjorsvik*, 117 Wn.2d at 104 (quoting *Hagner v. United States*, 285 U.S. 427, 433, 52 S. Ct. 417, 76 L. Ed. 861 (1932)). A court should be guided by common sense and practicality in construing the language, and thus missing elements may be implied if the language supports such a result. *State v. Campbell*, 125 Wn.2d 797, 801, 888 P.2d 1185 (1995).

If the necessary elements are not found or fairly implied, prejudice is presumed and reversal is required. *State v. Zillyette*, 173 Wn.2d 784, 786, 270 P.3d 589 (2012). But if at least some language, however vague, in the information gives the defendant notice of the allegedly missing elements, we must determine whether the defendant was nonetheless prejudiced by any vague or inartful language in the charge. *Kjorsvik*, 117 Wn.2d at 111.

### B. THE INFORMATION GAVE PROPER NOTICE OF THE CRIME CHARGED

Here, even if we assume without deciding that specific locations and dates are essential elements, Aquino's argument fails because the charging document gave sufficient notice of the

charges.[13]  Under a liberal reading, we are guided by common sense and practicality in construing the language, and thus missing elements may be implied if the language supports such a result. *Campbell*, 125 Wn.2d at 801.

Here, the information stated,

> That JOHN PALACIOS AQUINO, in the State of Washington, *on or about the 22nd day of January, 2015*, did unlawfully and feloniously, having been held for, charged with, or convicted of Identity Theft in the Second Degree and/or Forgery, a class "B" or "C" felony, and been released by court order or admitted to bail *with knowledge* of the requirement of a subsequent personal appearance before any court in this state, fail to appear as required, contrary to RCW 9A.76.170(1),(3)(c).

CP at 5 (emphasis added).  The wording is identical for the other count of bail jumping aside from the date, "the 18th day of March, 2015."  CP at 6.

The information thus included the dates, January 22 and March 18, when Aquino failed to appear.  And the information included that the State had to prove Aquino *had knowledge* of such requirement to appear.  We thus conclude that the allegedly missing element of Aquino's knowledge of the particular dates when he had to appear is implied by the information, if the language is construed using common sense and practicality.  *Campbell*, 125 Wn.2d at 801. Additionally, the information was filed in the Superior Court of Washington for Pierce County and issued by the Pierce County Prosecutor.  We conclude that the allegedly missing element of Aquino's knowledge that he had to appear in *Pierce County* should also be implied.  *Campbell*, 125 Wn.2d at 801.

---

[13] Additionally, if Aquino was unclear about the nature of the charges against him, he could have requested a bill of particulars but failed to do so.  CrR 2.1(c); *see also State v. Nonog*, 169 Wn.2d 220, 225 n.2, 237 P.3d 250 (2010) (holding that in some instances a vagueness challenge to a constitutionally sufficient information may be waived by failure to request a bill of particulars).

We next determine whether the defendant was nonetheless prejudiced by any vague or inartful language in the charge. *Kjorsvik*, 117 Wn.2d at 111. But Aquino failed to argue prejudice except to say that if the trial court concluded that the elements were *missing*, prejudice should be presumed. Prejudice is not presumed here because the necessary elements of the bail jumping charges are fairly implied by the charging document. *Zillyette*, 173 Wn.2d at 786. Because Aquino does not argue that he otherwise suffered prejudice, we hold that his claim fails. *Kjorsvik*, 117 Wn.2d at 111. Thus, we conclude that the information was not constitutionally deficient.

III. MOTION TO DISMISS

Aquino argues that the trial court erred when it denied his motion to dismiss or to suppress Officer Tracy's testimony because the State failed to disclose impeachment evidence thereby prejudicing him. This argument is unavailing.

A. STANDARD OF REVIEW AND RULES OF LAW

We review a trial court's CrR 8.3(b) ruling for abuse of discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997); *State v. Brooks*, 149 Wn. App. 373, 384, 203 P.3d 397 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Michielli*, 132 Wn.2d at 240; *Brooks*, 149 Wn. App. at 384.

Relief under CrR 8.3(b) requires a showing of arbitrary action or governmental misconduct and that such action prejudiced the defendant's right to a fair trial. *Brooks*, 149 Wn. App. at 384. Dismissal is an extraordinary remedy. *State v. Rohrich*, 149 Wn.2d 647, 653, 71 P.3d 638 (2003). When reviewing a trial court's decision regarding a dismissal of charges under CrR 8.3(b), appellate courts must evaluate whether the trial court's conclusions regarding *both* elements was an abuse of discretion. *Rohrich*, 149 Wn.2d at 654.

14

A prosecutor's decision not to disclose material evidence "favorable to an accused" violates that defendant's due process rights. *Brady*, 373 U.S. at 87. We review alleged due process violations under *Brady* de novo. *State v. Mullen*, 171 Wn.2d 881, 893, 259 P.3d 158 (2011). To establish a *Brady* violation, a defendant must demonstrate the existence of each of three elements: (1) the evidence at issue must be favorable to the accused, (2) that evidence must have been suppressed by the State, either willfully or inadvertently, and (3) prejudice must have ensued. *Mullen*, 171 Wn.2d at 895.

### B. DENIAL OF MOTION TO DISMISS WAS NOT AN ABUSE OF DISCRETION

1. IMPEACHMENT EVIDENCE FAVORABLE TO AQUINO

Aquino argues that the Delgado evidence was impeachment evidence favorable to his defense. The State argues that the trial court properly concluded that the Delgado evidence was not impeachment evidence. We agree with Aquino that the Delgado evidence was potential impeachment evidence.

    a. RULE OF LAW

Under *Brady*, the State must disclose impeachment evidence probative of witness credibility if that evidence is favorable to the accused. *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *and see United States v. Bagley*, 473 U.S. 667, 676-78, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

    b. DELGADO EVIDENCE WAS IMPEACHMENT EVIDENCE

Here, Officer Tracy testified that after he read Aquino his *Miranda* rights, Officer Tracy asked Aquino where he got the check. Aquino told Officer Tracy that he got the check in the mail. When Officer Tracy asked about Aquino's employer to learn more about how Aquino got the

check in the mail, Aquino said that he worked for the Paint Smith Company, but then said he actually worked for a subcontractor. And when asked for more information about the subcontractor, Aquino could not provide his last job site, pay rate, or supervisor name. This testimony related to Aquino's guilt because it illustrated that Aquino could not explain how he got the check, and thus prior instances of dishonesty by Officer Tracy could have been favorable evidence for Aquino's defense to lessen Officer Tracy's credibility.

In the Delgado case, in Officer Tracy's signed and sworn police report, he states that he stepped in front of Delgado's car, that Delgado "drove [the car] directly toward" Officer Tracy, and that Delgado would have hit Officer Tracy if he had remained where he stood. CP at 21. The surveillance video shows Officer Tracy running to the passenger side of Delgado's car, Delgado driving forward *past* Officer Tracy with space between Officer Tracy and the car, and Officer Tracy kicking at the car as it drives past him. Clarkson opined that the surveillance video contradicted Officer Tracy's version of events in his report, and she concluded that "[u]pon review of the surveillance tape, the State does not have sufficient evidence to pursue the charge of Assault in the Second Degree." CP at 23.

> Based on this evidence, the trial court here concluded that
>
> in order for this to be impeachment evidence, it needs to be clear that somebody lied under oath,[14] somebody made a false representation under oath, and I am not going to find, based on the video that I just saw, based on the report that I have read . . . I'm not going to find that this officer lied.

---

[14] Neither party disputes the trial court's legal conclusion here, but the trial court's legal assertion is incorrect. Impeachment evidence is not limited to evidence showing an individual lied under oath, but includes other evidence that could assist the jury with a credibility determination in the accused's favor, including an offer of leniency to a State witness in exchange for testimony. *See State v. Soh*, 115 Wn. App. 290, 295, 62 P.3d 900 (2003).

> Clearly, the video is at odds with his description of the event, but to find that he made a material misrepresentation or that he lied in the course of investigating this incident I think is more of a stretch than I'm going to make.
>
> . . . [A]ny time there is video, the video is almost always at odds with at least somebody's description of the event. To find that everybody is lying who describes an event different than it appears in a video is, in my judgment, not something that's appropriate, and I'm not going to make that kind of a finding in this case.

2 RP at 61-62. The trial court concluded that the Delgado evidence was not potential impeachment evidence and denied Aquino's motion to dismiss.

There were no records in Officer Tracy's file disciplining him for dishonesty during the Delgado case or during any other incident. But the video appeared to contradict Officer Tracy's statement in the Delgado case.

We hold that the Delgado evidence was potential impeachment evidence.[15] We hold this given the discrepancy between the report and the surveillance video and given the credence that the prosecutor gave to that discrepancy when she dropped the assault charge. And thus, we hold that this evidence was probative of Officer Tracy's credibility and was therefore impeachment evidence. *Giglio*, 405 U.S. at 153-54. We turn to analyze misconduct and prejudice below.

---

[15] In his reply brief, Aquino relies on *Scott v. Harris*, 550 U.S. 372, 378-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), for the proposition that in a summary judgment proceeding appellate courts should not conclude that reasonable minds could disagree on an issue where video evidence in the record discredits one party's version of events. The State does not address this case. The *Harris* Court held that where a video accurately depicts events, the lower court should have viewed the facts in the light depicted in a video that captured events underlying a plaintiff's claim. 550 U.S. at 378-81. But the *Harris* Court was reviewing a motion for summary judgment. 550 U.S. at 378. Thus, *Harris* is procedurally distinguishable from this case. However the reasoning that an accurate depiction of events on video should be given its due weight is nonetheless relevant here.

2.    ARBITRARY ACTION OR GOVERNMENTAL MISCONDUCT

Aquino asserts that by failing to disclose the Delgado evidence, the State committed misconduct. We agree.

We review the trial court's CrR 8.3(b) ruling for abuse of discretion. *Brooks*, 149 Wn. App. at 384. Relief under CrR 8.3(b) "requires a showing of arbitrary action or governmental misconduct, but the governmental misconduct need not be of an evil or dishonest nature; simple mismanagement is enough." *Brooks*, 149 Wn. App. at 384 (citing *State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980)). Violations of obligations under the discovery rules can support a finding of governmental misconduct. *See Brooks*, 149 Wn. App. at 375-76.

To establish a *Brady* violation, a defendant must demonstrate that evidence must have been suppressed by the State, either willfully or inadvertently. *Mullen*, 171 Wn.2d at 895. The prosecution cannot avoid its obligations under *Brady* by keeping itself ignorant of matters known to other state agents, but it has no duty to independently search for *Brady* evidence. *In re Pers. Restraint of Brennan*, 117 Wn. App. 797, 805, 72 P.3d 182 (2003).

Here, Aquino asserts that the State committed a *Brady* violation. Clarkson and the prosecutor in Aquino's case both worked for the Pierce County Prosecutor's office. And the State was able to access the video from the Delgado case to bring it to the hearing on Aquino's motion to dismiss. Thus, we conclude that the Delgado evidence was within the control of the Pierce County Prosecutor's office and that the assigned prosecutor had a duty to actually learn about the evidence. The prosecutor could not avoid its obligations under *Brady* by keeping itself ignorant of the evidence in its office. *Brennan*, 117 Wn. App. at 805. We thus conclude that the State was obligated to disclose the Delgado evidence. *Giglio*, 405 U.S. at 153-54. Violations of obligations

under the discovery rules can support a finding of governmental misconduct. *See Brooks*, 149 Wn. App. at 375-76. Accordingly, we hold that the trial court abused its discretion when it failed to conclude that the State committed governmental mismanagement, amounting to misconduct, when it did not disclose the Delgado evidence to Aquino.

3.      PREJUDICE

Aquino argues that he was prejudiced by the State withholding the Delgado evidence because the late discovery of the evidence inhibited his counsel's ability to prepare for his defense.[16] We disagree.[17]

The defendant must show that the State's governmental misconduct prejudiced his right to a fair trial. *Brooks*, 149 Wn. App. at 384. Such prejudice includes the right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense. *Brooks*, 149 Wn. App. at 384 (quoting *Michielli*, 132 Wn.2d at 240). CrR 8.3(b) exists "to see that one charged with crime is *fairly treated*." *State v. Whitney*, 96 Wn.2d 578, 580, 637 P.2d 956 (1981) (emphasis added); *see also Michielli*, 132 Wn.2d at 245-46 (holding a defendant was prejudiced where the State's delay in bringing serious charges until only five days before the

---

[16] Aquino also argues that the State's failure to disclose the Delgado evidence was prejudicial because Officer Tracy's testimony could have altered the jury's verdict regarding his fraud and identity theft charges. But Aquino does not include any argument about how the State's failure to disclose the Delgado evidence had any effect on the trial when Aquino had the Delgado evidence in his possession before and at trial.

[17] Here, the trial court did not rule on Aquino's arguments of prejudice related to the CrR 8.3(b) motion to dismiss. But this court can review the pleadings and record before the trial court to determine whether a defendant successfully supported his CrR 8.3(b) claim in order to determine if the trial court abused its discretion in granting or denying the motion. *Michielli*, 132 Wn.2d at 242.

scheduled trial forced the defendant to waive his speedy trial right in order to ask for a continuance to prepare his defense).

In his motion to dismiss, Aquino argued that the State's misconduct prejudiced Aquino because "at this moment, no one is scheduled to testify on the exculpatory matter." CP at 10. This was the sum of defense counsel's prejudice argument to the trial court.

Before trial, Aquino's counsel had the Delgado evidence that he argues the State should have disclosed to him before trial. At the dismissal hearing, defense counsel noted that he had been in contact with the prosecutor from the Delgado case, Clarkson, and confirmed that she could testify then or the following week. Aquino fails to explain how his counsel was not adequately prepared to present his defense.[18] He had the Delgado evidence before trial, he had secured a witness to introduce the evidence, and he had a defense strategy to impeach Officer Tracy with the evidence. Aquino fails to show that his counsel had insufficient time to adequately prepare a material part of his defense.

We conclude that Aquino fails to establish that his "late discovery" of the Delgado evidence prejudiced his right to a fair trial. Dismissal under CrR 8.3(b) is an extraordinary remedy. *Rohrich*, 149 Wn.2d at 653. We conclude that Aquino has failed to carry the burden to prove that the trial court abused its discretion when it denied his dismissal motion.[19]

---

[18] And because Aquino's counsel did not move to continue the trial date, the record does not establish whether a continuance would have implicated Aquino's speedy trial right.

[19] Alternatively, Aquino argues that the trial court should have suppressed Officer Tracy's testimony for the same reasons he argues the trial court should have granted his motion to dismiss. But Aquino offers little analysis between his two briefs to explain why suppression of Officer Tracy's testimony was warranted. Because Aquino was not prejudiced, we hold that the trial court did not abuse its discretion when it declined to suppress Officer Tracy's testimony as an alternative to dismissal.

IV. APPELLATE COSTS

Aquino argues that if the State substantially prevails on appeal and makes a request for costs, we should decline to impose costs because he is indigent. The State argues that costs may be appropriate to impose on the appellant, but that the procedure invented by *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016), raises the issue prematurely. We exercise our discretion and decline to impose appellate costs.

Under RCW 10.73.160(1), we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 625, 8 P.3d 300 (2000). Under RAP 14.2, we may exercise that discretion in a decision terminating review. We presume that a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f). We make an individualized inquiry in the review of appellate costs. *Sinclair*, 192 Wn. App. at 391.

The trial court entered an order of indigency. In the judgment and sentence, the trial court noted that Aquino was indigent and lacked prospects for future income. Aquino explained to the trial court that his daughter had a serious medical condition that created a significant hardship for his family. As a result, Aquino's wife worked full time and Aquino helped care for his daughter and their other three children. Aquino had not worked in quite some time, but when he did work, he worked as a roofer. Aquino stated that he would look for work once released. He was sentenced to 10 months. Thus, we hold that an award of appellate costs to the State is not appropriate. RCW 10.73.160(1); RAP 15.2(f); RAP 14.2.

No. 48116-2-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.